Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>LUIS E. ROHENA NIEVES<br><br>Peticionario | KLCE202401388 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm.<br>ISCR202400443<br>ISCR202400446<br><br>Sobre:<br>Infr. Art. 6.02 y otros (Ley de Armas) |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Martínez Cordero, el Juez Cruz Hiraldo y la Juez Lotti Rodríguez.[1]

Lotti Rodríguez, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de mayo de 2025.

I.

El 16 de enero de 2024 el Ministerio Público presentó varias denuncias contra Luis E. Rohena Nieves, por violación a los Arts. 6.02, 6.05 y 6.09 de la Ley Núm. 168 de 2019.[2] Celebrada la correspondiente vista preliminar los días 20 de febrero, 4 de marzo y 11 de abril de 2024, el Tribunal de Primera Instancia determinó causa probable para acusar por los delitos imputados.

Tras presentarse, el 24 de abril de 2024, las correspondientes acusaciones, el 2 de julio del mismo año, la Defensa instó Moción de Desestimación al amparo de la Regla 64 (p) de Procedimiento Criminal.[3] Alegó, que en la vista preliminar no se había identificado correctamente ni en derecho al imputado. El 24 de julio de 2024 el Ministerio Público se opuso a la Moción de Desestimación.

---
[1] Conforme la OATA2025-069, se asignó a la Hon. Glorianne Lotti Rodríguez en sustitución del Hon. Abelardo Bermúdez Torres.
[2] 25 LPRA secs. 466A, 466d y 466h.
[3] 34 LPRA Ap. II, R. 64(p).

El 30 de septiembre de 2024, notificada el 2 de octubre, el Tribunal de Primera Instancia emitió Resolución en la cual declaró No Ha Lugar la Moción de Desestimación. El 17 de octubre de 2024, la Defensa solicitó, sin éxito, al foro primario que reconsiderara su dictamen. Alegó que los testigos que comparecieron a la vista preliminar señalaron que no conocían a Rohena Nieves. Además, que los testigos mencionaron que no estaban investigando con anterioridad a la fecha de los hechos a Rohena Nieves. El 7 de noviembre de 2024, el Ministerio Público presentó su Oposición a la Solicitud de Reconsideración. Así las cosas, el 20 de noviembre de 2024, el Foro primario declaró No Ha Lugar la referida reconsideración. Oportunamente, Rohena Nieves recurrió ante nos mediante Petición de Certiorari. Plantea:

> **PRIMER ERROR**: EL TPI ERRÓ AL NO DESESTIMAR LAS ACUSACIONES PRESENTADAS EN CONTRA DEL PETICIONARIO DE EPÍGRAFE AL AMPARO DE LA REGLA 64 (P) DE PROCEDIMIENTO CRIMINAL POR AUSENCIA TOTAL DEL ELEMENTO INDISPENSABLE SOBRE LA IDENTIFICACIÓN DEL AQUÍ PETICIONARIO.

> **SEGUNDO ERROR**: EL TPI ERRÓ AL NO EVALUAR EL PLANTEAMIENTO REALIZADO SOBRE LA NO IDENTIFICACIÓN CORRECTA Y EN DERECHO QUE DEBÍA REALIZARSE A NIVEL DE VISTA PRELIMINAR DEL AQUÍ PETICIONARIO.

Luego de varios incidentes procesales innecesarios pormenorizar, el 25 de marzo de 2025, el Procurador General presentó Solicitud de Desestimación y Escrito en Cumplimiento de Orden. Arguyó que procede la desestimación del recurso ante el incumplimiento de la parte peticionaria en presentar evidencia de la notificación de la Resolución emitida por el foro recurrido el 30 de septiembre de 2024, así como la notificación de la denegatoria a la solicitud de reconsideración emitida el 20 de noviembre de 2024. Ante ello, planteó que estos documentos son indispensables para que este foro apelativo pueda corroborar su jurisdicción. En la

alternativa, el Estado argumentó que procede denegar la expedición del recurso de certiorari. En síntesis, arguyó que la identificación de Rohena Nieves es válida debido a que fue una libre, espontánea y confiable. Además, que no hubo ausencia total de la prueba debido a que durante la Vista Preliminar se presentó evidencia sobre la manera y circunstancias en que se dio la identificación por parte de los dos (2) testigos. Además, se admitió en evidencia la grabación realizada durante la transacción donde se despendió con claridad la identidad del conductor del vehículo, quien resultó ser el peticionario. Por otra parte, sostuvo que se cumplió con la ¨scintilla¨ de evidencia requerida en la Vista Preliminar para establecer *prima facie* los elementos de los delitos y su conexión con el imputado.

El 27 de marzo de 2025 otorgamos a Rohena Nieves diez (10) días para mostrar causa por la cual no debemos desestimar el Recurso. El 7 de abril de 2025, Rohena Nieves presentó Moción en Cumplimiento de Orden.

Por los fundamentos que expondremos a continuación, denegamos la expedición del Auto de Certiorari.

II.

La Regla 64(p) de Procedimiento Criminal,[4] provee a la defensa mecanismos para solicitar la desestimación de una acusación basado en que la determinación de causa probable no se hizo conforme a derecho. Debido a que dicha vista goza de una presunción de corrección[5], corresponde al acusado persuadir al tribunal, con el quantum de preponderancia de prueba, de que la determinación de causa probable no fue conforme a derecho.[6]

La vista preliminar cumple su propósito de evitar que, sin adecuada justificación, el Estado continúe con un proceso judicial,[7]

---

[4] 34 LPRA Ap. II, R. 64 (p).
[5] *Pueblo v. Andaluz Méndez*, 143 DPR 656, 664 (1997); *Pueblo v. Rodríguez Aponte*, 116 DPR 653, 664 (1985); *Rabell Martínez v. Tribunal*, 101 DPR 796, 799 (1973).
[6] *Pueblo v. Negrón Nazario*, 191 DPR 720 (2014).
[7] *Pueblo v. Rodríguez Aponte*, supra, pág. 664.

si el Ministerio Público presenta una ¨scintilla¨ de prueba que establezca prima facie que se cometió un delito y la conexión del imputado con éste.[8] Ergo, no se trata de un mini-juicio en el que el Estado viene obligado a presentar toda la prueba de la que dispone para demostrar la culpabilidad del imputado más allá de toda duda razonable.[9]

Así pues, para que prospere una moción bajo la Regla 64(p), supra, la defensa tiene que demostrar que, en la determinación de causa probable, medió una ausencia total de prueba admisible para sostener la determinación de causa.[10]

B.

Como es sabido, la determinación de causa probable para acusar en la Vista Preliminar requiere además de probar los elementos del delito imputado, presentar evidencia que establezca la conexión del acusado con el delito. Conforme a lo anterior, el profesor Chiesa ha dispuesto que:

> Para probar la conexión del acusado con el delito, esto es, que el acusado fue el autor del delito, el ministerio fiscal puede recurrir a evidencia directa -como un testigo ocular- o a evidencia indirecta o circunstancial. Hoy día se recurre mucho a evidencia científica de gran valor probatorio, como el DNA. Pero sigue siendo el medio más usado el testimonio de una persona que identifica al imputado como el autor del delito, bien sea la víctima u otro testigo, lo que incluye evidencia de la identificación que hizo ese testigo antes del juicio, como en una rueda de confrontación o por medio de fotografías, o la identificación en corte.[11]

En nuestro ordenamiento jurídico, para establecer la identificación de un acusado como autor de un delito, el Ministerio Fiscal puede utilizar evidencia directa y evidencia indirecta o

---

[8] *Pueblo v. Rivera Cuevas*, 181 DPR 669, 664 (2011).
[9] *Hernández Ortega v. Tribunal*, 102 DPR 765, 769 (1974); Pueblo v. Rodríguez, supra, págs. 663-664.
[10] *Pueblo v. Andaluz*, 143 DPR, en la pág. 662; Pueblo v. Rodríguez Ríos, 136 DPR 685, 690-691 (1994); *Vázquez Rosado v. Tribunal Superior*, 100 DPR 592, 594 (1972).
[11] E. L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, 1ra ed., Colombia, Editorial Forum, 1993, Vol. III pág. 197.

circunstancial. La evidencia directa es aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente.[12] Por otro lado, la evidencia indirecta o circunstancial es aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual por sí o en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia.[13] Dicha evidencia directa o indirecta se materializa mediante identificación con evidencia científica, identificación con testigos en corte o identificación mediante rueda de detenidos o por fotografías, realizadas fuera de corte.

En cuanto a la evidencia de identificación, nuestro Tribunal Supremo adoptó en *Pueblo v. Petersen Pietersz,*[14] la norma establecida por el Tribunal Supremo de Estados Unidos, que hace depender la confiabilidad de la identificación de la totalidad de las circunstancias, aun cuando el procedimiento haya sido sugestivo. Tal evaluación habrá de guiarse por los siguientes factores: la oportunidad que tuvo el testigo de observar al autor del delito durante la comisión del mismo, el grado de atención del testigo, la precisión de la descripción del autor hecha previamente por el testigo, el nivel de certeza demostrado por el testigo y, el tiempo transcurrido entre el crimen y la identificación.[15] En este respecto se reconoció que la presencia de sugestión no excluye irremisiblemente la prueba, sino que impone al juzgador la labor de separar campos en el testimonio para determinar su confiabilidad y la existencia de prueba de identificación no influida ni maculada por conducta sugestiva.

C.

---

[12] Regla 110 (h) de Evidencia, 32 LPRA Ap. VI. R. 110(h).
[13] *Id.*
[14] *Pueblo v. Petersen Pietersz,* 107 DPR 172 (1978).
[15] *Pueblo v. Toro Martínez,* 2000 DPR 834, 864.

Como regla general, todo dictamen emitido por el Tribunal de Primera Instancia en el curso del proceso judicial es revisable, bien sea por apelación o por *certiorari*. La apelación, la revisión y el derecho a acudir a un foro más alto son parte fundamental de nuestro sistema de enjuiciamiento desde sus comienzos. El auto de *certiorari* es un remedio procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional. Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.[16] No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción.[17]

Con el fin de que podamos ejercer de una manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento de este Tribunal nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. Dispone:

> **Regla 40. Criterios para expedición del auto de *certiorari***
>
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[16] *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001).

[17] *Pueblo* v. *Rivera Montalvo*, supra; *Medina Nazario* v. *McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *Pueblo* v. *Custodio Colón*, 192 DPR 567, 588 (2015).

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[18]

El *certiorari,* como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso.[19] La denegatoria de expedir un auto de *certiorari,* no constituye una adjudicación en los méritos, es el ejercicio de nuestra facultad discrecional para no intervenir a destiempo con el trámite pautado por el foro de instancia.[20]

Además, como se sabe, el tribunal de instancia goza de amplia discreción para pautar el manejo de los casos ante su consideración, a fin de lograr la búsqueda de la verdad y que sean adjudicados de manera rápida y correctamente. Como foro intermedio apelativo, no vamos a intervenir con el ejercicio de tal autoridad, excepto se demuestre que medió craso abuso de discreción, que hubo una interpretación o aplicación errónea de una norma procesal o sustantiva de derecho y que la intervención revisora evitará perjuicio sustancial a la parte alegadamente afectada.[21]

### III.

Evaluado el recurso ante nuestra consideración y utilizando los criterios anteriormente expuestos, no encontramos ningún elemento que nos motive a intervenir con la determinación del foro de instancia en este momento. No encontramos que el foro primario haya incurrido en abuso de su discreción al emitir la determinación

---

[18] 4 LPRA Ap. XXII-B, R. 40.
[19] *Pérez* v. *Tribunal de Distrito*, 69 DPR 4, 7 (1948).
[20] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R.40; *Filiberty* v. *Soc. de Gananciales*, 147 DPR 834, 838 (1999).
[21] *García* v. *Asociación*, 165 DPR 311, 322 (2005); *Meléndez* v. *Caribbean Int'l News,* supra, págs. 664-665.

de *No Ha Lugar* a la *Moción en Solicitud de Desestimación al Amparo de la Regla 64P* interpuesta por Rohena Nieves.

Según la prueba desfilada en la vista preliminar, la Agente Encubierto, 2023-1SAOE-128, al participar de una transacción el 13 de septiembre de 2024, en la que había quedado con el co-acusado Burgos Ortiz para llevar a cabo una compra ilegal de armas ilegales en el estacionamiento del Mayagüez Mall, vio a Rohena Nieves manejando el vehículo Toyota Corolla con tablilla JTT-311.[22] Añadió que, su agente de contacto grabó la transacción desde otro ángulo.[23] Además, sostuvo en varias ocasiones que Rohena Nieves era quien se encontraba manejando el vehículo.

Por otra parte, el agente Irving Alicea Caraballo (Agente), también logró identificar a Rohena Nieves. Esto, debido a que días previos a la transacción que nos ocupa, un oficial de Ponce le había contactado para identificar una persona con la que habían intervenido y, tras buscar en el sistema, resultó ser Rohena Nieves.[24] Así, pues, el Agente sostuvo que al ver el video tomado por los compañeros identificó el vehículo que conducía Rohena Nieves.[25] Como es sabido, en la Vista Preliminar es requerida una ¨scintilla¨ de prueba que establezca prima facie que se cometió un delito y la conexión del imputado con éste.

Luego de haber evaluado el expediente en su totalidad, incluyendo, además, la Resolución objeto de revisión, la TPO, así como el derecho aplicable, no hemos encontrado que el foro primario haya actuado con prejuicio o parcialidad, que haya habido un craso abuso de discreción ni tampoco, que la determinación sea manifiestamente errónea. Es por lo anterior, que no procede nuestra intervención en esta etapa de los procedimientos. Por tanto, en

---

[22] TPO, en las págs. 34, 35, 41 y 69 de la vista del 20 de febrero de 2024.
[23] Id., en la pág. 50.
[24] Id., en la pág. 8 de la vista del 11 de abril de 2024.
[25] Id., en la pág. 10 de la vista del 11 de abril de 2024.

virtud de lo dispuesto en la Regla 40 del Reglamento de este Tribunal, hemos acordado denegar la expedición del auto de Certiorari.

IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de Certiorari y se devuelve el caso al foro primario para la continuación de los procedimientos.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones